**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVOLUTIONARY INTELLIGENCE LLC,

        Plaintiff(s),

        v.

YELP INC,

        Defendant(s).

_____/

No. C-13-03587 DMR

**ORDER GRANTING DEFENDANT
YELP INC.'S MOTION TO STAY
[DOCKET NO. 91]**

*REDACTED PUBLIC VERSION*

Before the court is a motion filed by Defendant Yelp, Inc. to stay the case.  [Docket No. 91.]
A hearing was held on the motion on December 18, 2013.  For the reasons stated below and at the
hearing, the motion is granted.

**I.  BACKGROUND**

Plaintiff Evolutionary Intelligence LLC is "a limited liability company organized and
existing under the laws of the State of Delaware, with its principal place of business in San
Francisco, California."  Complaint [Docket No. 1] ¶ 1.  On October 17, 2012, Plaintiff filed this
action for patent infringement in the Eastern District of Texas, alleging that Yelp infringes U.S.

**United States District Court**

For the Northern District of California

1  Patent Nos. 7,010,536 ("the '536 Patent") and 7,702,682 ("the '683 Patent") (the "Asserted

2  Patents").[1]  Yelp was served with the complaint on October 23, 2012.  [Docket No. 6.]

3  **A. Motion to Dismiss and Transfer of Venue**

4        In lieu of an answer, Yelp timely filed a motion to dismiss pursuant to Federal Rule of Civil

5  Procedure 12(b)(6) on December 13, 2012.[2]  On December 21, 2012, Yelp filed a motion to transfer

6  venue to this district.  Plaintiff sought and received three extensions of time to file a response to the

7  motion to transfer venue.  [Docket Nos. 18, 24, 38.]  Meanwhile, the parties conducted venue-related

8  discovery.  *See* Order dated Feb. 27, 2013 [Docket No. 33] at 5-6 ("[The case is] in the very early

9  stages of litigation.  With the exception of venue discovery and briefing on any pending motions, the

10  parties will not be required to proceed on the merits, including discovery not related to venue, until

11  such time as the Court conducts a scheduling conference.").  On July 31, 2013, Magistrate Judge

12  Craven granted the motion to transfer venue.  [Docket No. 66.]  On August 2, 2013, the case was

13  transferred to this court.  [Docket No. 68.]

14  **B. Discovery to Date**

15        The parties have engaged in limited discovery to date, much of it focused on the issue of

16  venue.  Plaintiff served disclosure of asserted claims and infringement contentions on Yelp on May

17  22, 2013.  [Docket No. 52.]  On June 7, 2013, Plaintiff served twelve common interrogatories on all

18  nine defendants in the actions in the Eastern District of Texas.  McCrary Decl. Ex. B.  The

19  interrogatories sought, *inter alia*, source code constructs, information regarding the databases that

20  interface with the Yelp source code, Yelp's application programming interfaces, and the source code

21

---

22      [1]  This action is one of nine originally filed in the Eastern District of Texas by Plaintiff asserting

23  infringement of the Asserted Patents against nine different defendants.  *See Evolutionary Intelligence LLC v. Apple Inc.*, No. 3:13-cv-4201-WHA; *Evolutionary Intelligence LLC v. Facebook, Inc.*, No. 3:13-

24  cv-4202-SI; *Evolutionary Intelligence LLC v. FourSquare Labs, Inc.*, No. 3:13-cv-4203-MMC; *Evolutionary Intelligence LLC v. Groupon, Inc.*, No. 3:13-cv-4204-SI; *Evolutionary Intelligence LLC v. LivingSocial, Inc.*, No. 3:13-cv-4205-WHO; *Evolutionary Intelligence LLC v. Millennial Media, Inc.*,

25  No. 5:13-cv-4206-EJD; *Evolutionary Intelligence LLC v. Twitter, Inc.*, No. 4:13-cv-4207-JSW; and *Evolutionary Intelligence LLC v. Sprint Nextel Corp. et al.*, No. 3:13-cv-4513-RMW.  These cases were

26  subsequently transferred to the Northern District of California.

27      [2]  The motion to dismiss was fully briefed as of February 1, 2013.  However, the Texas court transferred the case before ruling on it.  Subsequently, it was withdrawn by Yelp.  *See* Docket No. 86

28  at 6.  Yelp did not file an answer until December 9, 2013. [Docket No. 101.]

1   constructs responsible for data caching.  *Id.*  The parties met and conferred for the first time

2   regarding Yelp's objections and responses on July 30, 2013.  Connor Decl. Ex. 1.  The next day, the

3   case was transferred to this district; the parties thereafter did not meet and confer regarding the

4   common interrogatories.  Reply at 4.

5          On November 12, 2013, Plaintiff served "substantially the same interrogatories," except

6   specifically on Yelp rather than as common interrogatories on all defendants.  McCrary Decl. Ex. H

7   (Evolutionary Intelligence's First Set of Interrogatories to Yelp).  Responses to these interrogatories

8   were due on December 16, 2013.

9          Plaintiff has produced over 4,000 pages to date and it claims its document production is

10  substantially complete.  McCracy Decl. ¶ 3.

11  **C.  Petitions for *Inter Partes* Review**

12         On October 23, 2013, seven petitions for *inter partes* review ("IPR") were filed at the United

13  States Patent & Trademark Office ("PTO") Patent Trial and Appeal Board ("PTAB"), including one

14  by Yelp, challenging the validity of all of the claims in the Asserted Patents.  Tadlock Decl. [Docket

15  No. 91], Ex. 1 (excerpts of seven petitions for *inter partes* review filed by Yelp, Twitter, Inc., Apple

16  Inc., and Facebook, Inc.).  Yelp moves for a stay pending the outcome of these petitions.

17                          **II.  *INTER PARTES* REVIEW PROCEDURES**

18         IPR is a relatively new trial proceeding conducted at the PTAB to review the patentability of

19  one or more claims in a patent.  Any "person who is not the owner of a patent may file with the

20  [PTO] a petition to institute an inter partes review of the patent."  35 U.S.C. § 311(a).  IPR

21  petitioners "may request to cancel as unpatentable 1 or more claims of a patent only on a ground that

22  could be raised under [35 U.S.C.] section 102 or 103 and only on the basis of prior art consisting of

23  patents or printed publications."  35 U.S.C. § 311(b).  IPR became available on September 16, 2012.

24                  The IPR procedure was meant "to establish a more efficient and streamlined patent

25  system that will improve patent quality and limit unnecessary and counterproductive litigation

26  costs."  *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, Case No. 13-cv-2218-JST, 2013

27  WL 6021324, at *1 (N.D. Cal. November 13, 2013) (quoting 77 Fed.Reg. 48680-01, at *48680).

28  The IPR timeline is more compressed than the timelines under either the predecessor *inter partes*

United States District Court

For the Northern District of California

1    reexamination procedure or the *ex parte* reexamination procedure.  An IPR may not be instituted if

2    the petitioner files a petition more than one year after it was served with a complaint alleging

3    infringement of the patent.  35 U.S.C. § 315(b).  After the petition is filed, the patent owner may,

4    within three months, file a preliminary response "setting forth the reasons why no inter partes review

5    should be instituted; alternatively, the patent owner may expedite the proceeding by waiving the

6    preliminary response."  37 C.F.R. § 42.107(a)-(b).

7           The PTO must decide whether to institute IPR within three months of the filing of the

8    preliminary response, or, if no response is filed, by the last date on which a response may be filed.[3]

9    35 U.S.C. § 314(b).  Once an IPR trial is instituted, it must be "administered such that pendency

10   before the Board after institution is normally no more than one year. The time can be extended by up

11   to six months for good cause by the Chief Administrative Patent Judge, or adjusted by the Board in

12   the case of joinder."  37 C.F.R. § 42.100.  In contrast, the average length of an inter partes

13   reexamination was around 36 month, and if either party appealed the determination from the

14   reexamination, the process could extend another three years.  *Affinity Labs of Texas v. Apple Inc.*,

15   09-04436 CW, 2010 WL 1753206, at *3 (N.D. Cal. Apr. 29, 2010).

16          In order to institute an IPR trial, the PTO must determine that the petition presents "a

17   reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims

18   challenged in the petition," 35 U.S.C. § 314(a), which is a "more stringent [requirement] than the

19   previous 'substantial new question of patentability' standard" under the predecessor *inter partes*

20   reexamination procedure.  *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, No.

21   12-cv-00329-AJG, 2013 WL 1876459, at *2, -- F.Supp.2d -- (C.D. Cal. May 2, 2013).  The

22   petitioner then has the burden of establishing lack of patentability by a preponderance of the

23   evidence.  35 U.S.C. § 316(e).  A dissatisfied party may appeal the final written decision of the

24   PTAB to the Federal Circuit Court of Appeals.  35 U.S.C. § 141.

25

26

27   ─────────────────

28          [3]  According to the parties, the timeline in this case requires Plaintiff to file a response by
     January 2014 and the PTO to decide whether to institute IPR by April 2014 at the latest.

United States District Court

For the Northern District of California

According to the PTO's statistics, in fiscal year 2013, 82 percent of petitions resulted in the PTO instituting IPR trials.[4]  On average, the PTO has taken only 63 days (out of the three months permitted by the statute) to decide whether to institute an IPR trial from the time the patent owner's preliminary response was due, or from the time it was waived.[5]  As of October 23, 2013, the PTO had rendered only one final written decision under the new IPR procedure, so statistics concerning the final results of IPR trials are not available. However, with respect to the patents for which the PTO instituted IPR, it reviewed 88 percent of the total claims challenged in the underlying petitions. *Id.*  Under the former inter partes reexamination procedure, the PTO instituted proceedings for 94 percent of requests filed since 1999.  Of those, 11 percent resulted in confirmation of all claims, 42 percent resulted in cancellation or disclaimer of all claims, and 40 percent resulted in a change in some, but not all of the claims.[6]

## III.  LEGAL STANDARD

Judge Grewal has summarized the unique circumstances of patent litigation that have created the question at bar:

> Patent disputes are unique in some ways, not so unique in others. One unique, and frankly, often puzzling aspect of patent cases is that they can proceed in any number of different venues, often at the same time. Even ignoring the possibility of multiple cases against multiple defendants proceeding in multiple districts, a lone case in a single district case can proceed in parallel with a case before the International Trade Commission even as the Patent and Trademark Office reconsiders the scope and validity of the patent at issue. The result is that multiple arms (and resources) of the United States government can be called upon, in parallel, and asked to apply multiple standards, even in a dispute involving the same plaintiff, the same defendant, the same patent, and the same accused product. The court is hard-pressed to identify even a single circumstance outside the patent world where such redundancies are not only permitted, but invited.
>
> To mitigate the burden of these redundancies, a burden born not only by the taxpayers but the parties themselves, the law provides any number of different options to "stay" proceedings in one venue while they continue in another . . . . With respect to related

---

[4]   "AIA Progress Statistics," available at uspto.gov/ip/boards/bpai/stats/aia_statistics_10_23_2013.pdf (last accessed Dec. 9, 2013)

[5]   *See* "A Look at the First Year of Inter Partes Review Proceedings Before the United States Patent and Trademark Office," available at ipr-pgr.com/wp-content/uploads/2013/09/IPR-PGR-Report-Vol.-3.pdf (last accessed Dec. 9, 2013).

[6]   "Inter Partes Reexamination Historical Statistics," available at uspto.gov/patents/stats/inter_parte_historical_stats_roll_up_ EOY2012.pdf (last accessed Dec. 12, 2013).

proceedings at the PTO, courts can invoke their inherent authority to stay the case until the agency figures whether and how the claims at issues will survive a closer look.

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*, C-12-4958-PSG, 2013 WL 4475940, at *1 (N.D. Cal. Aug. 16, 2013).

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). "While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the court must decide stay requests on a case-by-case basis." *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, Case No. 13-cv-2218-JST, 2013 WL 6021324, at *1 (N.D. Cal. November 13, 2013); *Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.*, No. 06-cv-04206-WHA, 2007 WL 1052883, at * 1 (N.D.Cal. Apr. 5, 2007) ("From a case management perspective, the possible benefits must be weighed in each instance against the possible drawbacks."). Though a stay is never required, it may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F.Supp.2d 1022, 1023 (N.D.Cal. 2005) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983)). Indeed, "an auxiliary function [of the reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration." *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985). Nevertheless, "[t]here is no per se rule that patent cases should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation." *Tokuyama Corp. v. Vision Dynamics, LLC*, No. 08-cv-2781-SBA, 2008 WL 4452118, at *2 (N.D.Cal. Oct. 3, 2008) (quoting *Soverain Software LLC v. Amazon.Com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005)). *See also Comcast*, 2007 WL 1052883, at *1 ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.").

In determining whether to stay a case pending reexamination, courts consider the following factors: (1) the stage and history of the litigation; (2) whether a stay would simplify the issues in

United States District Court
For the Northern District of California

question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear

tactical disadvantage to the non-moving party. *Cygnus*, 385 F.Supp.2d at 1023. "[T]here is a liberal

policy in favor of granting motions to stay proceedings pending the outcome of USPTO

reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.

Supp. 1378, 1381 (N.D. Cal. 1994).

## IV.  DISCUSSION

### A.  Stage of the Litigation

This case is in its infancy: only limited discovery has occurred, most of it restricted to the

issue of venue; no trial date or discovery deadline has been set and only limited pretrial dates have

been set; Yelp filed an answer on December 9, 2013; the court has not substantially intervened in the

action such as by conducting a *Markman* hearing or issuing a claim construction order.

This is not the type of case where reexamination was sought on the eve of trial or after

protracted discovery.  "When, as here, there has been no material progress in the litigation, courts in

this district strongly favor granting stays pending" reexamination.  *Pragmatus AV, LLC v. Facebook,

Inc.*, No. 11-cv-02168-EJD, 2011 WL 4802958, at *2-3 (N.D. Cal. Oct. 11, 2011) (granting stay

where plaintiff had filed infringement contentions and first set of interrogatories, requests for

admission, and requests for production of documents, and the deadline for defendant's service of

invalidity contentions was the day before the court's order). *See also Internet Patents Corp. v.

eBags, Inc.*, No. 12-c-3385-SBA, 2013 WL 4609533, at *2 (N.D. Cal. Aug. 28, 2013) ("There is a

liberal policy in favor of granting motions to stay proceedings pending reexamination of a patent,

especially in cases that are still in the initial stages of litigation and where there has been little or no

discovery.") (citation omitted).

Plaintiff argues that but for Yelp's refusal to produce certain discovery related to its accused

product, the case would be at a more advanced stage of litigation.  Opp. at 18.  As noted above,

neither party attempted to meet and confer about Plaintiff's common interrogatories once the case

was transferred to this district, and Plaintiff re-served "substantially the same" interrogatories on

Yelp in mid-November 2013.  Responses were not due until December 16, 2013—*after* the date

1  Plaintiff filed its opposition to this motion, in which it accuses Defendant of refusing to respond.

2  McCrary Decl. Ex. I.  Under these facts, the court finds that this factor weighs in favor of the stay.

**B. Simplification of Issues and Trial**

**1. Simplification of Issues**

The second factor examines whether a stay will simplify the issues in question and trial of the case. As explained by the Federal Circuit: "[o]ne purpose of the reexamination procedure is to eliminate trial of [an] issue (when [a] claim is canceled) or to facilitate trial . . . by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould*, 705 F.2d at 1342; *see also Ho Keung Tse v. Apple Inc.*, No. 06-cv-6573-SBA, 2007 WL 2904279, at *3 (N.D. Cal. Oct. 4, 2007) ("Waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the Court with the opinion of the PTO and clarifying the scope of the claims."). "A stay is not contingent upon the reexamination proceeding resolving every claim and issue in this action. Rather, the salient question is whether the reexamination will aid the Court or otherwise streamline the litigation." *Internet Patents Corp.*, 2013 WL 4609533, at *3 (citation omitted).[7]

Here, if the PTAB cancels *all* of the asserted claims of the Asserted Patents, this action will be rendered moot.  Should the PTAB cancel or narrow *any* of the asserted claims of the Asserted Patents, the scope of this litigation may be significantly simplified.  *See AT & T Intellectual Property I v. Tivo, Inc.*, 774 F.Supp.2d 1049, 1053 (N.D. Cal. 2011); *Star Envirotech, Inc. v. Redline Detection, LLC*, No. 12-cv-01861-JGB, 2013 WL 1716068, at *2 (C.D. Cal. Apr. 3, 2013).  Indeed,

---

[7] Plaintiff cites *Esco Corp. v. Berkeley Forge & Tool,Inc.* in support of the argument that "[t]o truly simplify the issues . . . the outcome of the reexamination must finally resolve *all* issues in the litigation." No. 09-cv-1635-SBA, 2009 WL 3078463, at *3 (N.D. Cal. Sept. 28, 2009) (emphasis added). However, in *Esco*, the PTO had already issued an order determining that one of the two patents-in-suit was valid. The defendant sought a stay during the reexamination of the other patent, which the court denied in part because issues concerning the first patent would remain for the court's determination regardless of the reexamination of the second patent.  The other case Plaintiff cites is likewise inapposite.  In *Tokuyama Corp. v. Vision Dynamics, LLC*, the court denied the stay because regardless of the result of the patent reexamination, the court would have to resolve defendant's counterclaim for various antitrust violations. No. 08-cv-2781-SBA, 2008 WL 4452118, at *4 (N.D. Cal. Oct. 3, 2008).

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    the statistics proffered by Defendant reveal that a high percentage of review requests result in

2    alteration of the patent claims at issue in some respect.

3           Plaintiff argues that IPR proceedings cannot eliminate all of the issues in this litigation

4    because they are limited to the issue of invalidity with respect to the Asserted Patents, and that "the

5    PTO will not consider whether Yelp infringes the asserted patents and will not engage in claim

6    construction that will simplify issues for the Court . . . . [and] will not resolve any issues of 'system'

7    prior art." Opp. at 14.  This argument is misplaced, because if the PTAB determines that the

8    Asserted Patents are invalid, the issues of infringement, claim construction, and prior art would be

9    moot.  Plaintiff has alleged only patent infringement claims and Yelp has not brought counterclaims.

10   Thus, there are no claims that could not be resolved by IPR.

11          The court's interest in simplifying the proceedings by waiting for the PTAB to reexamine the

12   asserted claims weighs in favor of granting a stay.  If the PTAB finds that some or all of the asserted

13   claims of the Asserted Patents are invalid or subject to modification, the Court will have wasted

14   resources and the parties will have expended funds addressing invalid claims or claims subsequently

15   modified during reexamination.  *Internet Patents Corp.*, 2013 WL 4609533, at *3 (citation omitted).

16   On the other hand, if the PTAB upholds the validity of the asserted claims, this is strong evidence

17   that the court must consider in assessing whether the party asserting invalidity has met its burden of

18   clear and convincing evidence.  *Id.*  Moreover, the PTAB's expert opinion will provide guidance for

19   the Court on the pertinent issues.  *Id.*  Furthermore, the granting of a stay will avoid the possibility of

20   inconsistent results.  *See Microsoft Corp. v. Tivo Inc.,* No. 10-cv-240-LHK, 2011 WL 1748428, at *5

21   (N.D. Cal. May 6, 2011) (noting that since it is possible that this Court and the PTO could reach

22   inconsistent conclusions regarding the same patent, there is a significant concern of wasting

23   resources by proceeding forward) (quotations omitted).  Finally, "[e]ven if these claims are not all

24   cancelled, the IPR could encourage settlement or lead to amendments to the claims, which could

25   create intervening rights and limit potential damages."  *Software Rights Archive, LLC v. Facebook,*

26   *Inc.*, No. 12-cv-3970 RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013).

27          **2.  Estoppel Effect**

28

9

**United States District Court**

For the Northern District of California

A petitioner in an IPR may not assert in a subsequent district court action that a claim is invalid on any ground that the petitioner raised or reasonably could have been raised in the IPR.  35 U.S.C. § 315(e)(2).  Yelp argues that a stay would simplify the issues because after the final written decision of the PTAB is issued, Yelp would be estopped from relitigating in this action any invalidity arguments it raised or could have raised before the PTAB.  Plaintiff responds Yelp would not be estopped from litigating invalidity claims that were raised or that could have been raised in *third-party* petitions,[8] and IPR would therefore not necessarily simplify this case.

Plaintiff's concern is moot, as Yelp agrees to be estopped from litigating any invalidity claims that Apple raised or could have raised in its IPR petitions regarding the '683 Patent. *See* Reply at 8.  *See also Pi-Net*, 2013 WL 4475940, at *5 (granting stay on the condition that "defendants agree[] to be bound by an estoppel similar to the provisions of Section 315(e) such that they may not assert in this suit that the claim is invalid on any ground that [a third party] raised or reasonably could have raised during the IPR").

**3. Stay Prior to Initial Decision on IPR**

Plaintiff also argues that this motion to stay is premature because it was brought prior to an initial decision by the PTO.  However, "[i]n light of the 'liberal policy' favoring stays pending reexamination, a court can grant a stay even if the Patent Office is still considering whether to grant a party's reexamination request." *Ho Keung Tse*, 2007 WL 2904279, at *2.  "Indeed, it is not uncommon for this court to grant stays pending reexamination prior to the PTO deciding to reexamine the patent." *Pragmatus*, 2011 WL 4802958, at *3 (summarizing cases).

Furthermore, although there is certainly no guarantee that an IPR will simplify the issues before the court, the higher standard for instituting an IPR ("reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" as opposed to the "substantial new question of patentability" standard for instituting *inter partes* reexamination) "gives some promise that at least certain challenged claims will be struck down or amended if the PTAB

---

[8]  As noted above, six of the seven IPR petitions were filed by parties other than Yelp.  Yelp's petition challenges all of the claims of the '536 Patent, so Yelp would be estopped from relitigating in this action any invalidity arguments on the '536 Patent it raised or could have raised before the PTAB.  The only IPR petitions that challenge the claims of the '683 Patent were filed by Apple.

United States District Court

For the Northern District of California

1  grants the petitions." *Pi-Net Int'l*, 2013 WL 4475940, at *4.  *See also Star Envirotech*, 2013 WL

2  1716068, at *2 ("As this Court has previously noted, the amended standards for granting inter partes

3  review probably results in an even higher likelihood than under the prior standard that the issues in

4  this action will be simplified by the reexamination.") (quotations omitted).

5        On the other hand, if the PTAB rejects the IPR request, the stay will be relatively short.

6  Plaintiff has not sufficiently identified the prejudice it would suffer if discovery was stayed for about

7  four months at a maximum, from December 2013 until April 2014, the latest date on which the PTO

8  must decide whether to proceed with IPR.

9        On balance, the second factor weighs in favor of the stay.

10  **C.  Prejudice and Tactical Concerns**

11       Plaintiff claims that a stay would prejudice it because it would result in the loss of critical

12  evidence that Plaintiff needs to prove its infringement case, and would deprive Plaintiff of the right

13  to exclude others from practicing its patent.  Plaintiff further contends that Yelp unduly delayed in

14  seeking the stay.

15       **1.  Loss of Evidence**

16       Plaintiff argues that it will be prejudiced because of the delay caused by the reexamination

17  process in that evidence may degrade.

18       First, Plaintiff is concerned that "[g]iven that Yelp frequently releases new versions of the

19  Yelp mobile applications and because of the fluid nature of software development, the risk of loss of

20  preservation of previous versions of the accused product's source code is great."  Opp. at 8.  This

21  concern is speculative: simply because a software product is updated does not mean that source code

22  for previous versions is lost, and Plaintiff has no basis for an assertion to the contrary.  Speculative

23  assertions that evidence may be lost as a result of a stay pending reexamination are insufficient.

24  *Software Rights Archive, LLC v. Facebook, Inc.*, C-12-3970 RMW, 2013 WL 5225522, at *5 (N.D.

25  Cal. Sept. 17, 2013) ("[Plaintiff's] assertions of prejudice based on delay alone are merely

26  speculative. [Plaintiff] has not identified a particular expert witness who is likely to be lost, nor is

27  the court convinced that the relevant technology or evidence thereof would become "unavailable"

28  for the purposes of a patent infringement analysis.  Rather, the source code and technical

United States District Court

For the Northern District of California

documentation already produced would be preserved during the pendency of a stay. Delay alone, without specific examples of prejudice resulting therefrom, is insufficient to establish *undue prejudice*."). Plaintiff offers cases in which electronic data was inadvertently destroyed or destroyed in bad faith despite safeguards taken to preserve the data, but all of these examples of destruction of evidence occurred outside of the context of a stay pending reexamination. Plaintiff has not demonstrated that "the risk of evidence loss is greater here than in any other case and that it amounts to more than the delay inherent to the reexamination process." *Pragmatus*, 2011 WL 4802958, at *3.

Second, Plaintiff is concerned that discovery will be hard to acquire from Yelp employees who may leave the company while the case is stayed,[9] and that witnesses memory will fade during the stay. Again, these are consequences that apply to any case where reexamination is sought and cannot alone demonstrate undue prejudice. "[T]he prejudice claimed by Plaintiff applies to any case where reexamination is sought. It is for that reason that courts have refused to find undue prejudice based solely on delay caused by the reexamination process." *Internet Patents Corp.*, 2013 WL 4609533 at *4 (declining to find undue prejudice even though "Plaintiff contends that the delay inherent in . . . reexamination proceedings is itself prejudicial . . . [as] evidence could be lost and witnesses' memories could fade").

**2. Harm in the Marketplace**

"[C]ourts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement." *Pragmatus*, 2011 WL 4802958, at *3 (quoting *Implicit Networks Inc. ., v. Advanced Micro Devices, Inc.,* No. 08-cv-184 JLR, 2009 WL 357902, at *3 (W.D.Wash. Feb. 9, 2009)); *Convergence Technologies (USA), LLC v. Microloops Corp.*, No. 10-cv-02051-EJD, 2012 WL 1232187, at *3 (N.D. Cal. Apr. 12, 2012) (where plaintiff does not practice the patented invention, "[p]rofit loss to Plaintiff is therefore not an

---

[9] To support this assertion, Plaintiff notes that in the course of venue-related discovery, Yelp produced a list of 265 Yelp software developers that showed that 132 employees had left the company. McCrary Decl. Ex. F. The document alone gives no indication of the timing of the termination of each developer's employment. Yelp notes that Plaintiff's broad venue discovery requests sought identification of every *current and former* Yelp software engineer. As such, this document does little to illuminate the frequency of employee turnover at Yelp.

United States District Court

For the Northern District of California

issue for consideration" in determining motion to stay) (citing *Rite–Hite Corp. v. Kelley Co., Inc.,*, 1548 (Fed. Cir. 1995)).  If the parties are not competitors (meaning that the plaintiff does not market any products or services covered by the claims of the patents-in-suit and does not seek a preliminary injunction), the plaintiff does not risk irreparable harm by the defendant's continued use of the accused technology and can be fully restored to the *status quo ante* with monetary relief.  *Software Rights Archive*, 2013 WL 5225522, at *6 (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1339-41 (Fed. Cir. 2012)). This factor would strongly favor granting the stay. *Agavo Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc,* No. 10-cv-2863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.").

The parties dispute whether Plaintiff is a "non-practicing entity," meaning that it does not research and develop new technology but rather acquires patents, licenses the technology, and sues alleged infringers.  In its infringement contentions, Plaintiff stated: "Evolutionary Intelligence hereby discloses, pursuant to [E.D. Tex. Patent Local Rule] 3-1(f), that Evolutionary Intelligence does not have any apparatus, product, device, process, method, act, or other instrumentality that practices the claimed invention."  Tadlock Decl. Ex. 2 at 8.  Plaintiff now asserts that it is in the process of developing products that will practice the Asserted Patents.

However, Plaintiff has submitted only the declaration of Michael De Angelo in support of this assertion and no other evidence, such as documentation of any research, design, or testing related to product development.  The failure to submit additional evidence is especially notable in light of the fact that Plaintiff claims its document production is "substantially complete."  McCracy Decl. ¶ 3.  Thus, the sum total of Plaintiff's evidence that it practices the Asserted Patents is De Angelo's declaration that ██████████ "is currently involved in product development, intellectual property development, licensing efforts, capital financing, and marketing related to the technology of the asserted patents.  In particular, ████████ is currently developing a web broswer product that will ultimately practice the technology of the Asserted Patents."  De Angelo Decl. ¶ 5.  The unsupported assertion that Plaintiff intends to practice the Asserted Patents does not

United States District Court

For the Northern District of California

suffice to demonstrate that Plaintiff will be prejudiced by a stay because it will suffer harm in the marketplace.[10]

### 3. Undue Delay

Plaintiff contends that Yelp unduly delayed in seeking reexamination.

Yelp filed its request for IPR exactly one year after Plaintiff served the complaint on Yelp. That Yelp waited until the last day of the statutory period to file at least raises the possibility that the IPR petition was a dilatory tactic. Regardless, Yelp was entitled to do so under 35 U.S.C. § 16(b). "[P]arties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework." *Convergence Technologies*, 2012 WL 1232187, at *3. Thus, just as Plaintiff was entitled to institute this litigation under federal patent law, Yelp was entitled to timely invoke the reexamination process. *Id.* ("The litigation and reexamination back-and-forth are just two moving parts of the same machine."). In addition, Yelp initially did not file a responsive pleading and instead filed a motion to dismiss and a motion to transfer, and then the parties engaged in venue-related discovery. Given these circumstances, it is understandable that Yelp's resources were concentrated on those efforts rather than on invalidity arguments and petitions to the PTO. Finally, Yelp's IPR petition was filed five months after Plaintiff's service of its preliminary infringement contentions in May 2013. Other courts have found this timing to be reasonable, especially where the infringement contentions narrow the scope of the invalidity contentions. *See Ho Keung Tse*, 2007 WL 2904279, at *4 (finding no dilatory motive when defendants filed their request for reexamination three months after they served their invalidity contentions); *Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, No. 12-cv-21-JST-JPRX, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) (filing IPR petitions ten months after complaint but only three to four months after receiving infringement contentions was not unreasonable, because the infringement contentions identified 100 claims from a possible 288 in the six patents-in-suit, and "the need to assess the disputed claims was a valid reason for not filing a petition shortly after the Complaint was filed").

---

[10] Plaintiff's prejudice argument is additionally undercut by its failure to move for a preliminary injunction in this case. *See Software Rights Archive*, 2013 WL 5225522 at *6.

United States District Court

For the Northern District of California

### 4.  Misleading Tactics

Plaintiff contends that a stay would reward Yelp for its misleading arguments to the Eastern District of Texas judge.  Plaintiff claims that Yelp misled that judge by arguing that this case would reach trial faster in the Northern District of California, which was a disingenuous statement because Yelp never indicated to the judge that it would delay the resolution of this case by seeking a stay once the case was transferred to this district.  Upon closer inspection, however, it appears that Yelp simply argued that the median time for disposition of cases in both districts were roughly the same, and the "court congestion" factor in the transfer of venue consideration was neutral.  [Docket No. 14 at 13.]  Yelp did not "advocate[] for this District on the basis of expediency," as Plaintiff claims (*see* Opp. at 17), nor did Yelp dissemble about its intention to file an IPR petition or seek a stay in either district.  Plaintiff has mischaracterized Yelp's argument.

**D.  Bifurcation of Damages**

The parties agree that if the court declines to stay the case, discovery should be bifurcated such that discovery related to the issue of damages would not occur until after the *Markman* hearing. However, because the court finds that a stay is appropriate in this case, this issue is moot.

## IV.  CONCLUSION

For the foregoing reasons, Yelp's motion to stay this case pending IPR is **granted, and this matter is stayed**.  The stay is conditioned on Yelp's agreement that it shall be estopped from litigating any invalidity claims that Apple raised or could have raised in its IPR petitions regarding the '683 Patent.

Parties shall file a joint status report within seven days of the PTO's final decision on whether to grant Yelp's or any other third party's IPR petitions challenging the patents in suit, informing the court of the PTO's decision.

//

//

//

//

//

If any of the pending IPR petitions are granted, the stay shall remain in effect and the parties shall file a joint status update on the status of the IPR proceedings every three months from the date of the PTO's initial determination to initiate the IPR.  Upon the conclusion of the IPR proceedings, or if the PTO decides not to grant any of the pending IPR petitions, the court will permit a motion to immediately lift the stay.

IT IS SO ORDERED.

Dated:  December 18, 2013



DONNA M. RYU
United States Magistrate Judge

28