1

2

3

4

5

6

7

8

9

10

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, SPRINT COMMUNICATIONS COMPANY L.P., SPRINT SPECTRUM L.P., SPRINT SOLUTIONS INC.,<br><br>                    Defendants. | Case Nos. 13-04513, 13-04201, 13-04202, 13-04203, 13-04204, 13-04205, 13-04206, 13-04207, 13-03587<br><br>**ORDER GRANTING MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS** |
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>                    Defendants. | |

ORDER GRANTING MOTION TO DISMISS          - 1 -

**United States District Court**
For the Northern District of California

1
2
3
4
5
6

EVOLUTIONARY INTELLIGENCE,
LLC,

                Plaintiff,

v.

FACEBOOK, INC.,

                Defendants.

7
8
9
10
11
12

EVOLUTIONARY INTELLIGENCE,
LLC,

                Plaintiff,

v.

FOURSQUARE LABS, INC.,

                Defendants.

13
14
15
16
17
18

EVOLUTIONARY INTELLIGENCE,
LLC,

                Plaintiff,

v.

GROUPON, INC.,

                Defendants.

19
20
21
22
23
24
25

EVOLUTIONARY INTELLIGENCE,
LLC,

                Plaintiff,

v.

LIVINGSOCIAL, INC.,

                Defendants.

26
27
28

ORDER GRANTING MOTION TO DISMISS     - 2 -

**United States District Court**
For the Northern District of California

1
2
3
4
5
6

EVOLUTIONARY INTELLIGENCE,
LLC,

                    Plaintiff,

v.

TWITTER, INC.,

                    Defendants.

7
8
9
10
11
12

EVOLUTIONARY INTELLIGENCE,
LLC,

                    Plaintiff,

v.

YELP, INC.,

                    Defendants.

13
14
15
16
17
18

EVOLUTIONARY INTELLIGENCE,
LLC,

                    Plaintiff,

v.

MILLENNIAL MEDIA, INC.,

                    Defendants.

19
20
21
22
23
24
25
26
27

Defendants Sprint Nextel Corporation, Sprint Communications Company L.P., Sprint Spectrum L.P., Sprint Solutions Inc., Apple, Inc., Facebook, Inc., Foursquare Labs, Inc., Groupon, Inc., LivingSocial, Inc., Twitter, Inc., Yelp, Inc., and Millennial Media, Inc. (collectively, "defendants") move to dismiss plaintiff Evolutionary Intelligence, LLC's ("EI") complaint, and for judgment on the pleadings. Dkt. No. 188.[1] Defendants argue that all claims of the asserted patents, U.S. Patent Nos. 7,010,536 ("the '536 patent") and 7,702,682 ("the '682 patent"), are invalid for failure to claim patent-eligible subject matter. For the reasons explained below, the court GRANTS the motion.

28

---

[1] ECF citations are to the docket in *Evolutionary Intelligence, LLC v. Sprint Nextel Corporation et al.*, Case No. 13-4213, unless otherwise noted.

ORDER GRANTING MOTION TO DISMISS          - 3 -

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. BACKGROUND

EI asserts that defendants each infringe the '536 and '682 patents, both of which are entitled "System and Method for Creating and Manipulating Information Containers with Dynamic Registers." The '682 patent issued on April 20, 2010, and is a continuation of the '536 patent, which issued on March 7, 2006. '682 patent at 1; '536 patent at 1. The two patents share the same specification, claim priority to the same provisional application (No. 60/073,209, filed January 30, 1998), identify the same sole inventor (Michael De Angelo), and are both now owned by EI. '682 patent at 1; '536 patent at 1; Dkt. No. 1 ¶¶ 12, 17.

The common specification describes the patents as directed to a "means to create and manipulate information containers." '682 patent, col.1 ll.28.[2] EI previously characterized the patents as containing three broad categories of independent claims: (1) methods of tracking searches; (2) time-based information containers; and (3) location-based information containers. *See Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, Case No. 12-0791, Dkt. No. 167, at 2 (E.D. Tex. Oct. 17, 2012). The specification explains that such containers store information on various types of computer and digital networks, as well as on physical, published, and "other" media. '682 patent, col.3 ll.13–15. The containers include various types of "registers" which perform functions such as identifying the container or contents, providing rules of interaction between containers, and recording the history of the container. *Id*. col.13 ll.4–10. The containers also have "gateways" to "control[] the interaction of the container with other containers, systems or processes." '536 patent, claims 1, 2, 15, and 16. The patents also state that the patented invention "includes a search interface or browser" which allows a "user to submit, record and access search streams or phrases generated historically by himself, other users, or the system." '682 patent, col.6 ll.10–14.

The specification summarizes the invention in very broad terms as:

> [A] system and methods for manufacturing information on, upgrading the utility of, and developing intelligence in, a computer or digital network, local, wide area, public, corporate, or digital-based, supported, or enhanced physical media form or public or published media, or other by offering the means to create and manipulate information containers with dynamic registers.

---

[2] Because the two asserted patents share the same specification, the court adopts defendants' convention of citing the column and line numbers in the '682 patent when referencing the specification. Claim references are of course patent-specific.

1   *Id*. col.3 ll.10–16.

2       The specification describes a preferred embodiment configured with "an input device 24, an

3   output device 16, a processor 18, a memory unit 22, a data storage device 20, and a communication

4   device 26 operating on a network 201." *Id*. col.7 ll.35–38, Fig. 1; *see also id*. col.7 l.38–col.8 l.44

5   (describing components).

6       **A.  The '682 Patent**

7       The '682 patent contains seven independent claims (claims 1 and 18–23), and sixteen

8   dependent claims. Independent claim 1 is representative:

9       **1.** A computer-implemented method comprising:

    receiving a search query;

10      searching, using the computer, first container registers encapsulated and
        logically defined in a plurality of containers to identify identified

11          containers responsive to the search query, the container registers having
            defined therein data comprising historical data associated with

12          interactions of the identified containers with other containers from the
            plurality of containers, wherein searching the first container registers

13          comprises searching the historical data; encapsulating the identified
            containers in a new container; updating second container registers of

14          the identified containers with data associated with interactions of the
            identified containers with the new container; and

15      providing a list characterizing the identified containers.

16

17  '682 patent, col. 29 ll.52–67. Independent claim 19 is identical to claim 1 except that the preamble

18  states "[a] computer program product, tangibly embodied on computer-readable media, comprising

19  instructions operable to cause data processing apparatus to" perform the steps of the method in

20  claim 1. *Id*. col.31 ll.28–30. Likewise, independent claim 21 is identical to claim 1 except that it is

21  an apparatus claim in means-plus-function form. *Id*. col. 32 ll.5–22. Independent claim 23 is

22  identical to claim 1 except for the fact that it claims "search query templates" in the place of

23  "containers" in claim 1. *Id*. col. 32 ll.44–61.

24      Independent claims 18, 20, and 22 are identical to independent claims 1, 19, and 21

25  respectively, except they claim "polling" gateways rather than "searching" containers. *See id*. col.31

26  ll.7–27; col.31 l.47–col.32 l.4; col. 32 ll.23–43. However, the claims make clear that "polling the

27

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   plurality of gateways comprises searching the historical data," and therefore claims 18, 20, and 22

2   rise or fall with the other independent claims. *See, e.g., id*. col.31 ll.18–20.

3         Dependent claims 2–17 depend from claim 1, and add various component and process

4   limitations such as a "data tree having at least one parent-child relationship" (claim 2), *id*. col.30

5   ll.1–3, and specifying that the "list characterizing the identified containers" "provides a title of each

6   identified container and a short description of its contents" (claim 7), *id*. col.30 ll.25–27.

7       **B.  The '536 Patent**

8         The '536 patent contains four independent claims (claims 1, 2, 15, and 16) and twelve

9   dependent claims. Each is an apparatus claim. Independent claim 1 is representative:

> **1.** An apparatus for transmitting, receiving and manipulating information on a computer system, the apparatus including a plurality of containers, each container being a logically defined data enclosure and comprising:
>
> an information element having information;
>
> a plurality of registers, the plurality of registers forming part of the container and including
>
> a first register for storing a unique container identification value,
>
> a second register having a representation designating time and governing interactions of the container with other containers, systems or processes according to utility of information in the information element relative to an external-to-the-apparatus event time,
>
> an active time register for identifying times at which the container will act upon other containers, processes, systems or gateways,
>
> a passive time register for identifying times at which the container can be acted upon by other containers, processes, systems or gateways, and
>
> a neutral time register for identifying times at which the container may [interact] with other containers, processes, systems or gateways; and
>
> a gateway attached to and forming part of the container, the gateway controlling the interaction of the container with other containers, systems or processes.

'536 patent, col.30 ll.6–30. Independent claim 2 is identical to claim 1 except that whereas claim 1

is directed to the use of "time" as a means of governing interaction between containers, claim 2 is

directed to the use of "space." *Compare id*. col.30 ll.15–27 and ll.40–54. Independent claims 15 and

16 are identical to claims 1 and 2, respectively, except claims 15 and 16 contain an "at least one

United States District Court
For the Northern District of California

1    acquire register" limitation in lieu of the three "active," "passive," and "neutral" "space" or "time"

2    registers in claims 1 and 2. *Id*. col.32, ll.15–18, 39–42.

3        Dependent claims 3–14 all depend from claims 1 or 2. Dependent claims 3–8 add various

4    additional registers to the "plurality of registers" claimed in claims 1 and 2. *See, e.g.*, *id*. col.30

5    ll.58–62 ("The apparatus of claim **1** or **2**, wherein the plurality of registers includes at least one

6    container history register for storing information regarding past interaction of the container with

7    other containers, systems or processes, the container history register being modifiable.").

8    Dependent claims 9-12 add various additional means-plus-function limitations to the "gateway"

9    claimed in claims 1 and 2. *See, e.g.*, *id.* col.31 ll.18–22 ("The apparatus of claim **1** or **2**, wherein the

10   gateway includes means for acting upon another container, the means for acting upon another

11   container using the plurality of registers to determine whether and how the container acts upon other

12   containers."). Dependent claim 13 adds an "an expert system" limitation to the "gateway" claimed

13   in claims 1 and 2. *Id*. col.31 ll.38–41. Finally, dependent claim 14 limits the "information element"

14   in claims 1 and 2 to "one from the group of text, graphic images, video, audio, a digital pattern, a

15   process, a nested container, bit, natural number and a system."). *Id*. col.31 ll.42–45.

16       In October 2012, Evolutionary Intelligence, LLC ("Evolutionary Intelligence") filed

17   complaints alleging infringement of the '536 and '682 patents in the Eastern District of Texas

18   against nine groups of defendants.[3] From July to September 2013, the nine actions were transferred

19   to this district.

20       The parties subsequently sought *inter partes* review ("IPR") of the asserted patents at the

21   U.S. Patent and Trademark Office ("PTO"). On April 25, 2014, the Patent Trial and Appeal Board

22   ("PTAB") granted one IPR petition as to claims 2–12, 14, and 16 of the '536 patent, but denied

23   defendants' IPR petitions as to the other claims of the '536 patent and all claims of the '682 patent.

24

25   [3] The nine cases are *Evolutionary Intelligence LLC v. Apple, Inc.*, 12-0783 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Facebook, Inc.*, 12-0784 (E.D. Tex. Oct. 17, 2012);

26   *Evolutionary Intelligence LLC v. Foursquare Labs, Inc.*, 12-0785 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Groupon, Inc.*, 12-0787 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. LivingSocial, Inc.*, 12-0789 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence*

27   *LLC v. Millenial Media, Inc.*, 12-0790 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, 12-0791 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Twitter,*

28   *Inc.*, 12-0792 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Yelp, Inc.*, 12-0794 (E.D. Tex. Oct. 17, 2012).

1    *See* '536 patent, IPR2014-00086, Institution of *Inter Partes* Review (P.T.A.B. April 25, 2014)

2    (granting Apple's IPR petition as to claims 2–12, 14, and 16 of the '536 patent). Before the cases

3    were related, all nine defendants brought motions to stay pending IPR in their separate actions, and

4    each motion to stay was granted.

5    On June 23, 2014, the undersigned ordered that the parties in all cases show cause why the

6    *Evolutionary Intelligence* cases should not be consolidated for all pretrial proceedings through claim

7    construction. *See, e.g., Evolutionary Intelligence LLC v. Sprint Nextel Corp., et al.*, Case No. 13-

8    04513 (N.D. Cal. June 23, 2014), Dkt. No. 143. Following a hearing and an order assigning the

9    issue of consolidation and relation to the undersigned, s*ee Evolutionary Intelligence LLC v. Sprint*

10   *Nextel Corp., et al.*, Case No. 13-04513 (N.D. Cal. July 28, 2014), Dkt. No. 158, the court ordered

11   that the *Evolutionary Intelligence* cases be related, *see Evolutionary Intelligence LLC v. Sprint*

12   *Nextel Corp., et al.*, Case No. 13-04513 (N.D. Cal. July 28, 2014), Dkt. No. 159. Following

13   consolidation, on October 17, 2014 the court granted a motion to maintain the stay in each case.

14   Dkt. No. 184.

15   On April 16, 2015 the PTAB issued its final written decision in the IPR proceedings, holding

16   the '536 patent to be valid over the cited prior art. Dkt. No. 185, at 1. Upon the PTAB's issuance of

17   its final written decision, the stay in these cases automatically expired. *See* Dkt. No. 184, at 14.

18   Defendants filed the instant motion to dismiss and for judgment on the pleadings on June 1,

19   2015.[4] Dkt. No. 188. EI filed an opposition on June 26, 2015, Dkt. No. 193,[5] and defendants replied

20   on July 14, 2015, Dkt. No. 200. The court held a hearing on the motion on July 28, 2015.

21

22   _____

[4] Because they have yet to file an answer, defendants Groupon and Twitter move under Federal
Rule of Civil Procedure 12(b)(6) for an order to dismiss for failure to state a claim, while the

23   remaining defendants move under Federal Rule of Civil Procedure 12(c) for an order granting
judgment on the pleadings. Dkt. No. 188, at 1. Because, as discussed below, the standard for

24   decision both motions is the same, the court does not distinguish between the two in this order.
[5] EI filed with its opposition an expert declaration from Scott Taylor. Dkt. No. 193-1. In it, Taylor

25   opines on various aspects of the prior art, and states his opinions regarding the ways in which the
asserted patents claim patent-eligible subject matter. *See id*. However, such a declaration is not

26   appropriate for the court to consider on a motion to dismiss or motion for judgment on the
pleadings. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.

27   1989). On such motions, the court may only consider the complaint, documents incorporated by
reference in the complaint, and judicially noticed facts. *See Tellabs, Inc. v. Makor Issues & Rights,*

28   *Ltd.*, 551 U.S. 308, 322 (2007). Accordingly, because the Taylor declaration meets none of these
criteria, the court does not consider it.

United States District Court
For the Northern District of California

## II.  Analysis

### A.  Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient to state a claim, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### B.  Motion to Dismiss and for Judgment on the Pleadings

Defendants contend that the '536 and '682 patents are invalid for failure to claim patent-eligible subject matter. For the reasons set forth below, the court finds that both patents fail to claim patent-eligible subject matter, and GRANTS defendants' motion to dismiss and for judgment on the pleadings.

Section 101 of the Patent Act describes the types of inventions that are eligible for patent protection: "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Section 101 has long contained "an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc*., 133 S. Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 132 S. Ct. 1289, 1293 (2012)). In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, the Supreme Court explained that "the concern

United States District Court
For the Northern District of California

1    that drives this exclusionary principle [is] one of pre-emption." 134 S. Ct. 2347, 2354 (2014).

2    "Monopolization of [laws of nature, natural phenomena, and abstract ideas] through the grant of a

3    patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the

4    primary object of the patent laws." *Id*. (quoting *Mayo*, 132 S. Ct. at 1293). However, the Supreme

5    Court has also recognized the need to "tread carefully in construing this exclusionary principle lest

6    it swallow all of patent law." *Id*. Accordingly, "[a]pplications of [abstract] concepts to a new and

7    useful end . . . remain eligible for patent protection." *Id*. (internal quotations omitted).

8          The Supreme Court in *Mayo* "set forth a framework for distinguishing patents that claim

9    laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible

10   applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, a court must "determine whether the

11   claims at issue are directed to one of those patent-ineligible concepts." *Id*. If the court finds that the

12   patent claim recites a patent-ineligible abstract idea, the court then must "consider the elements of

13   each claim both individually and as an ordered combination to determine whether the [elements in

14   addition to the abstract idea] transform the nature of the claim into a patent-eligible application." *Id*.

15   In this step, the court "must examine the elements of the claim to determine whether it contains an

16   inventive concept sufficient to transform the claimed abstract idea into a patent-eligible

17   application." *Id*. at 2357.

18          **1.   '682 Patent**

19         The court first looks to whether the '682 patent recites an abstract idea. Defendants argue

20   that the '682 patent claims the abstract idea of "searching historical data." Dkt. No. 188, at 12. EI

21   argues with regard to both the '682 and '536 patents that "the purpose of the claims is to enable

22   computers to process containerized data in a way that results in dynamic modifications in order to

23   improve future processing efforts by computers." Dkt. No. 193, at 15. EI states that the '682 patent

24   "focus[es] on making dynamic modifications when processing computer search queries" in order to

25   make future searches more efficient. *Id*. The court finds that the '682 patent recites the abstract idea

26   of searching and processing containerized data. Updating searchable containers of information

27   based on past search results or based on external time or location resembles age-old forms of

28   information processing such as have previously been employed in libraries, businesses, and other

ORDER GRANTING MOTION TO DISMISS          - 10 -

*Left margin (vertical text):* **United States District Court** / For the Northern District of California

1          human enterprises with folders, books, time-cards, ledgers, and so on. The '682 patent merely

2          computerizes this abstract idea, taking advantage of the conventional advantages of computers in

3          terms of efficiency and speed.

4                    Because the court finds that the '682 patent claims the abstract idea of searching and

5          processing containerized data, the court proceeds to the second step in the *Mayo* framework. At this

6          step, the court must determine whether the limitations in the '682 patent represent a patent-eligible

7          application of the abstract idea of searching and processing containerized data. *Alice*, 134 S.Ct. at

8          2357. According to the Supreme Court, "the mere recitation of a generic computer cannot transform

9          a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 2358. Rather, to satisfy this

10         requirement, a computer-implemented invention must involve more than performance of "well-

11         understood, routine [and] conventional activities previously known to the industry." *Id*. at 2359

12         (internal quotation marks and citation omitted). The patent must contain an inventive concept which

13         "transform[s] the nature of the claim[s] into a patent-eligible application." *Id*. at 2355. Ultimately,

14         the patented invention must amount to "significantly more" than a patent on the ineligible abstract

15         idea itself. *Mayo*, 132 S. Ct. at 1294.

16                   The method claimed in the '682 patent comprises the following steps: (1) receiving a search

17         query; (2) searching; (3) encapsulating responsive containers in a new container; (4) updating

18         registers; (5) generating a list. *See* '682 patent, claim 1.[6] The language of the claims describes the

19         use of containers, registers and gateways to perform these steps on a computer. EI concedes that the

20         structures recited in the claims are conventional and routine. *See* Dkt. No. 193, at 17 (Arguing

21         "[a]lthough the *fundamental* structures are containers, registers, and gateways," the claims are

22         patent-eligible because they implement the inventive concepts with "specific arrangements" of

23         structures) (emphasis added). Each step individually is also conventional and routine, and EI does

24         not argue otherwise. Instead, EI argues that the claims, viewed in combination, contain an inventive

25         concept sufficient to transform the claimed abstract idea into a patent-eligible application.

26         ───────────────
           [6] Because EI identifies provides no analysis of how either patent's dependent claims differ from the
           independent claims (and in particular claim 1), and the court does not credit their conclusory
27         assertion in the opposition that the dependent claims recite "significant limitations," the court finds
           that the dependent claims for each patent rise and fall with the independent claims. As discussed
28         herein, the court finds that the independent claims fail to claim patent-eligible subject matter, and
           therefore finds that the dependent claims fail for the same reason.

ORDER GRANTING MOTION TO DISMISS          - 11 -

United States District Court
For the Northern District of California

1    Specifically, EI emphasizes that the patent was designed to overcome limitations associated with the

2    static information model of computerized data processing, and that the claims are drawn to patent-

3    eligible subject matter because they improve the functioning of computers. Dkt. No. 193, at 14–17.

4    EI relies primarily on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), in

5    which the Federal Circuit upheld a patent on the basis that it claimed a particular unconventional

6    solution to an internet-specific problem by overriding the conventional behavior of website

7    hyperlinks. However, far from supporting EI's position, the Federal Circuit's decision in *DDR*

8    *Holdings* demonstrates how the asserted claims here are not patent-eligible.

9            The patents at issue in *DDR Holdings* disclosed a system to create composite websites for

10   electronic shopping in an effort to address the problem of websites losing visitor traffic when

11   visitors clicked on advertisements. *Id*. at 1248–49. Under the prevailing mode of operation, host

12   websites would direct visitors to external advertiser websites when visitors clicked on

13   advertisements. *Id*. By contrast, the patents at issue in *DDR Holdings* described a system that would

14   generate a composite web page displaying the advertiser's product or other content while retaining

15   the "look and feel" of the host website. *Id*. "Thus, the host website can display a third-party

16   merchant's products, but retain its visitor traffic by displaying this product information from within

17   a generated web page that gives the viewer of the page the impression that she is viewing pages

18   served by the host's website." *Id*. at 1249 (internal quotation marks omitted). The Federal Circuit

19   observed that "the precise nature of the abstract idea [implemented in the asserted claims was] not

20   as straightforward as in *Alice* or some of our recent cases." *Id*. at 1257. Rather, the claims

21   "address[ed] a business challenge (retaining website visitors), [which was] a challenge particular to

22   the internet." *Id*. The Federal Circuit distinguished cases invalidating patents that "merely recite the

23   performance of some business practice known from the pre-internet world along with the

24   requirement to perform it on the internet" on the basis that the patent in *DDR Holdings* was

25   "necessarily rooted in computer technology in order to overcome a problem specifically arising in

26   the realm of computer networks." *Id*. The court emphasized that the creation of a composite web

27   page, as opposed to re-direction, "overrides the routine and conventional sequence of events

28   ordinarily triggered by the click of a hyperlink," and concluded that the claims survived *Alice*

**United States District Court**
For the Northern District of California

1     because they "recite an invention that is not merely the routine or conventional use of the internet."

2     *Id*. at 1258–59.

3          Here, EI argues that the asserted patents "were designed overcome the significant limitations

4     associated with the static information model of computerized data processing," by "enabl[ing]

5     computers to process containerized data in a way that results in dynamic modifications in order to

6     improve future processing efforts by computers." Dkt. No. 193, at 15. The court in *DDR Holdings*

7     held that asserted claims in that case were patent-eligible because they "specified how . . . to yield a

8     desired result" by "overriding the routine and conventional" operation of the claimed technology.

9     *DDR Holdings*, 773 F.3d at 1258–59. However, unlike in *DDR Holdings*, the problem identified by

10    EI—failure to dynamically update data structures over time and by location, or based on search

11    history—is not unique to computing. Indeed, it is not even a computing problem, but an information

12    organization problem. EI's attempt to provide a concrete example of the patented idea reveals the

13    deficiency of the claims: according to EI, the claimed invention "could enable a computer to provide

14    a user a dynamically changing list of restaurants that depends on the user's location, the time of day,

15    ratings provided by other users, and the user's browsing history," as well as "store historical

16    information to ensure that future processing for that user and other users is handled even more

17    efficiently." Dkt. No. 193, at 4. Implementations of these ideas have long existed outside the realm

18    of computing. As defendants' note, "searching for a nearby place to eat, or for a list of restaurants

19    open at a particular hour, or for those most frequented by others, does not solve a problem unique to

20    any field of computing." Dkt. No. 200, at 4. Restaurant guides have long provided lists of

21    restaurants organized by cuisine, city, neighborhood, and rating. Libraries have long organized their

22    holdings by subject matter and author name, and have employed "dynamic" containers in the form

23    of rotating selections based on staff review, recent release, or other criteria, located in a specific

24    section of the library. Nor is the sort of curation envisaged by EI a new phenomenon: galleries stage

25    curated exhibitions, video rental stores (when there were video rental stores) had shelves of

26    "customer favorites," and merchants of every kind have long kept track of what is popular, what is

27    new, and presented selections for purchase on these bases. Finally, the idea of "storing historical

28    information to ensure that future processing for that user and other users is handled more

United States District Court
For the Northern District of California

1    efficiently" is practiced by every local barista or bartender who remembers a particular customer's

2    favorite drink. The claims here merely take these age-old ideas and add a computer, which is

3    insufficient to confer patent eligibility. *See Alice*, 134 S. Ct. at 2358; *see also Bascom Research,*

4    *LLC v. LinkedIn, Inc.*, Case No. 12-6293, 2015 WL 149480, at *9–10 (N.D. Cal. Jan. 5, 2015)

5    (finding patent-ineligible "claims [that] amount[ed] to instructions to apply an abstract idea—i.e.,

6    the concept of establishing relationships between documents and making those relationships

7    accessible to other users.").

8            EI's insistence that the asserted claims are patent-eligible because they address specific

9    problems in the prior art related to the "static information model" used in computing also confuses

10   the "inventive feature" analysis under Section 101 with the ideas of novelty and nonobviousness

11   under Sections 102 and 103. Dkt. No. 193, at 2–4. To be novel, a patent claim must include an

12   element not present in the prior art. *See* 35 U.S.C. § 102. The "inventive feature" language in

13   Section 101 analysis is similar to language used in discussing anticipation and obviousness under 35

14   U.S.C. §§ 102 or 103. However, in the context of Section 101, "inventive feature" is better

15   understood as referring to the abstract idea doctrine's prohibition on patenting fundamental truths,

16   whether or not the fundamental truth was recently discovered. *Alice*, 134 S. Ct. at 2357 ("Because

17   the algorithm was an abstract idea, the claim had to supply a 'new and useful' application of the

18   idea in order to be patent-eligible. But the computer implementation did not supply the necessary

19   inventive concept; the process could be 'carried out in existing computers long in use.'") (quoting

20   *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). The inventive feature question under Section 101

21   concerns whether the patent adds something to the abstract idea that is "integral to the claimed

22   invention . . . ." *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278

23   (Fed. Cir. 2012). It is therefore important to distinguish between claim elements that are integral to

24   the claimed invention from those that are merely integral to the abstract idea embodied in the

25   invention. As discussed above, the application of the idea of searching and processing containerized

26   data in the '682 patent amounts to the use of common, conventional computing components in a

27   way that could be carried out in existing computers long in use. Regardless of whether the concept

28   of "dynamically" updating information containers and registers may have been novel and

United States District Court
For the Northern District of California

ORDER GRANTING MOTION TO DISMISS         - 14 -

1   nonobvious at the time this patent was filed, the claims do nothing to ground this abstract idea in a

2   specific way, other than to implement the idea on a computer.

3        EI also contends that the asserted claims require "specific arrangements" of "computer-

4   specific" structures, "operating in a specific way." Dkt. No. 193, at 17. EI further argues that the

5   claims are inventive because they include significant structural limitations such as the specific types

6   of registers that containers must have: "active time registers," "passive time registers," "acquire

7   registers," "identified search query templates," and so forth. *Id*. However, the limitations EI

8   identifies are simply functional descriptions of conventional concepts of data processing, such as

9   using data registers, or labels, to govern the interaction of various data. EI fails to explain how these

10  claimed fundamental elements, either individually or collectively, perform anything other than their

11  normal and expected functions. *See Content Extraction & Transmission LLC v. Wells Fargo Bank,*

12  *Nat'l Assoc.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (rejecting argument that inventive concept could

13  be found because additional claim limitations were "well-known, routine, and conventional

14  functions of scanners and computers"); *see also Internet Patents Corp. v. Active Network, Inc.*, Case

15  Nos. 2014-1048, 2014-1061, 2014-1062, 2014-1063, 2015 WL 3852975, at *5 (Fed. Cir. June 23,

16  2015). The elements of the '682 patent's claims are directed to employing time, location, and

17  history information in connection with data processing, and encompass nothing more than the

18  conventional and routine activities of searching, updating, and modifying data on a "computer

19  network operating in its normal, expected manner" using conventional computers and computer

20  components. *DDR Holdings*, 773 F.3d at 1258.

21       Furthermore, the above analysis makes clear that '682 patent claims no more than a

22  computer automation of what "can be performed in the human mind, or by a human using a pen and

23  paper." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). These

24  methods, "which are the equivalent of human mental work, are unpatentable abstract ideas." *Id*. at

25  1371; *see also Bancorp*, 687 F.3d at 1278–79.  ("To salvage an otherwise patent-ineligible process,

26  a computer must be integral to the claimed invention, facilitating the process in a way that a person

27  making calculations or computations could not. [Merely] [u]sing a computer to accelerate an

28  ineligible mental process does not make that process patent-eligible."); *Cogent Med., Inc. v. Elsevier*

United States District Court
For the Northern District of California

ORDER GRANTING MOTION TO DISMISS        - 15 -

1    *Inc.*, 70 F. Supp. 3d 1058, 1060 (N.D. Cal. 2014) (Finding patent-ineligible claims that amounted to

2    no more than a computer automation of what can be performed in the human mind, or by a human

3    using a pen and paper) (internal quotation marks and citation omitted).[7]

4              Finally, the patent's ineligibility is confirmed by the machine-or-transformation test.[8] Here,

5    the transformation prong is inapplicable and the claimed methods are not tied to any particular

6    machine. The claims require nothing more than a general purpose computer, "the mere recitation of

7    [which] cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*,

8    134 S. Ct. at 1258. Instead, to confer patent eligibility on a claim, the computer "must play a

9    significant part in permitting the claimed method to be performed, rather than function solely as an

10   obvious mechanism for permitting a solution to be achieved more quickly . . . ." *SiRF Tech., Inc. v.*

11   *Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). As was discussed above, the generic

12   computer required by the claims does no more than automate what "can be done mentally." *Benson*,

13   409 U.S. at 67.

14             In sum, the '682 patent is directed to the abstract idea of searching and processing

15   containerized data and does not contain an inventive concept sufficient to transform the claimed

16   subject matter into a patent-eligible application. Like the computer elements in *Alice*, the steps of

17   the '682 patent, considered individually or as an ordered combination, add nothing transformative to

18   the patent. Rather, the claims of the '862 patent merely recite routine and conventional computer

19   operations and structures as a means of implementing the abstract idea of searching and processing

20   containerized data.[9] Accordingly, because the '862 patent fails to claim patent-eligible subject

21   matter, the court GRANTS defendants' motion to dismiss as to the '862 patent.

---

[7] The court is also mindful that a patent on the abstract idea of searching and processing
containerized data which lacks a specific inventive concept to limit its scope poses a real threat of
preemption, and might well "tend to impede innovation more than it would tend to promote it,
thereby thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354.
[8] While "[t]he machine-or-transformation test is not the sole test for deciding whether an invention
is a patent-eligible 'process,'" it is still "a useful and important clue." *Bilski v. Kappos*, 561 U.S.
593, 604 (2010).
[9] *Alice* makes clear that the '682 patent's apparatus and computer product claims rise and fall with
the method claims. "[N]one of the hardware recited by the [apparatus or computer component]
claims offers a meaningful limitation beyond generally linking the use of the [method] to a
particular technological environment, that is, implementation via computers." *Alice*, 134 S. Ct. at
2360 (internal quotations omitted, [method] alteration in original). "Put another way, the [apparatus
and computer component] claims are no different from the method claims in substance. The method
claims recite the abstract idea implemented on a generic computer; the [apparatus and computer

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. '536 Patent

Defendants contend that the '536 patent claims the abstract idea of "storing information in labeled containers with rules and instructions on how the container or contents may be used." Dkt. No. 188, at 16. EI's position is that the '682 patent "focus[es] on processing constantly changing information corresponding to time and location to make future processing of time and location information by computers more efficient." Dkt. No. 193, at 15. The independent claims of the '536 patent are directed to "containers" comprising: (1) "an information element having information," (2) various "registers," and (3) a "gateway" for controlling interaction of the container with other containers, systems, or processes. The court finds that the '536 patent is also directed to an abstract idea: containerized data storage utilizing rules and instructions. Also like the '682 patent, the '536 patent merely computerizes the underlying abstract idea, taking advantage of the conventional advantages of computers in terms of efficiency and speed.

EI advances no separate arguments regarding the patent eligibility of the '536 patent under the second step of the *Mayo* analysis, and so the court finds that this patent also fails to claim patent-eligible subject matter, for the reasons set forth above. Accordingly, the court GRANTS defendants' motion to dismiss as to the '536 patent.

### III.  Order

For the foregoing reasons, defendants' motion to dismiss and for judgment on the pleadings is GRANTED.


Dated: October 6, 2015

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

---

component claims] claims recite a handful of generic computer components configured to implement the same idea." *Id*. Because the apparatus and computer product claims "add nothing of substance to the underlying abstract idea," they also fail to claim patent-eligible subject matter required by Section 101. *Id*.

ORDER GRANTING MOTION TO DISMISS        - 17 -